IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANNE CASHER, individually and as representative of the Estate of Darryl Casher, deceased )<br><br>Plaintiff, )<br><br>vs. )<br><br>HUDSON SPECIALTY INSURANCE COMPANY, )<br><br>Defendant. ) | CIVIL NO. 17–133–CG–B |

## ORDER

This matter is before the Court on Defendant Hudson Specialty Insurance Company's ("Hudson")—misnamed in the complaint as "Hudson Specialty Insurance Group"—motion for summary judgment (Doc. 16). After a review of the pleadings and in light of Plaintiff Dianne Casher's decision not to respond, the Court finds Hudson's motion is due to be granted.

**I. Background**

On September 11, 2011, Darryl Casher went with a friend to a Mobile, Alabama nightclub called Club Atlantis. (Doc. 1-3, p. 5). This casual night out with friends, however, proved to be fatal. After leaving Club Atlantis, Darryl passed by Cedric Burroughs, a minor who had allegedly been drinking in the club. *Id.* at p. 7. Without provocation, Cedric shot Darryl and fatally wounded him. *Id.* This case concerns the ensuing litigation.

## II. Procedural History

On February 17, 2012, Dianne Casher, individually and as the representative of Darryl's estate, filed suit against Crown Theater, Inc.[1]—the owner of Club Atlantis—in the Circuit Court of Mobile County (case no. 02–CV–2012–900345). (Doc. 1-3; Doc. 1-2, pp. 9). In that suit, Casher asserted claims for (1) violations of the Alabama Dram Shop Act, (2) wrongful death, (3) negligence, (4) wantonness, (5) negligent training/monitoring/supervision, and (6) joint venture. (Doc. 1-3).

Hudson insured Crown Theater under a liquor liability policy, number HSLL–10039, from July 20, 2011 through July 20, 2012. (Doc. 1-1, pp. 20–41). This policy established the limit of liability at $100,000 for "each common cause" and for the "aggregate" limit. *Id.* at 22. Hudson received notification of the underlying claim on October 5, 2011 from Centrex Underwriters. (Doc. 1-1, pp. 1, 4–6). The following day, Thomas Peppel, Assistant Vice President—Claims at Hudson, sent a letter to Crown Theater denying coverage and refusing to defend it. *Id.* at pp. 11–13. Hudson refused coverage on the basis of the policy's assault and battery exclusion. *Id.* at 12.

Thereafter, the underlying case proceeded through discovery, and Crown Theater and its co-defendants moved the circuit court for summary judgment in their favor. (*See* Doc. 16-2). Before the court reached a decision, however, Casher and the underlying Defendants entered into a *Pro Tanto*

---

[1] Casher also named Mark Stafford and Gulf Coast Productions, Inc. as defendants in the underlying state action. (Doc. 1-3).

Order of Dismissal with Prejudice concerning counts II through VI of the complaint. (Doc. 16-5). Casher "expressly reserve[d] the right to continue the action against the remaining Defendant CROWN THEATER solely on Plaintiff's Dram Shop Claim (Count I)." *Id.* at p. 2. On February 12, 2016, the circuit court entered a Consent Judgment in Plaintiff's favor against Crown Theater in the amount of $150,000 for Count I. (Doc. 1-3, p. 23).

On July 8, 2016, Casher filed suit against "Hudson Specialty Insurance Group" in the Circuit Court of Mobile County seeking a direct action claim for the insurance proceeds pursuant to Alabama Code § 27–23–2. (*See* Doc. 1). Casher attempted service twice on the fictitious entity and petitioned the circuit court for entry of default judgment on October 28, 2018 in the amount of $158,566.66 (Doc. 11-11). The circuit court entered default judgment against Hudson on November 22, 2016. (Doc. 1-1, pp. 18–19).

On March 22, 2017, Casher's counsel sent a letter notifying Hudson Specialty Insurance Group of the default judgment and stating it would begin collection efforts. (Doc. 1-1, pp. 1–2, 17). Peppel received the letter on March 23, and Hudson removed the action to this Court on March 28. (Doc. 1). Hudson moved this Court to set aside entry of the default judgment, and the Court granted the motion of the basis of improper service under Alabama law. (Docs. 6, 20). Casher moved to remand the action to the circuit court, but the undersigned denied the motion on similar findings of improper service. (Docs. 12, 21).

3

### III. Summary Judgment Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). The mere existence, however, of any factual dispute will not necessarily compel denial of a motion for summary judgment; rather, only material factual disputes preclude entry of summary judgment. *Lofton v.*

4

*Secretary of Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004).

As noted, Plaintiff filed no response to the instant motion. Summary judgment is not automatically granted by virtue of a nonmovant's silence.[2] Nonetheless, the Eleventh Circuit has provided clear guidance that a court is not obligated to read minds or to construct arguments or theories of relief that counsel have failed to raise and that are not reasonably presented on the face of the pleadings. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 142 (3d Cir. 2001) ("The ruling on a motion for summary judgment is to be made on the record the parties have actually presented, not on one potentially possible."); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring a "party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or

---

[2] *See, e.g., Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Although the failure to respond may allow the district court to accept the movant's factual assertions as true . . . the moving party must still establish the undisputed facts entitle him to a judgment as a matter of law"); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment"); *but see Isquith for and on Behalf of Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 199 (5th Cir. 1988) ("citing as "general rule" that "summary judgment was appropriate because the nonmovant, although faced with a summary judgment motion, chose not to respond to the motion at all").

else forever hold his peace," as a district court may ignore arguments not adequately developed by the non-movant"); *Erff v. MarkHon Indus., Inc.*, 781 F.2d 613, 619 (7th Cir. 1986) (trial judge need not conduct search for unraised issues that may lurk in the pleadings). Clearly, "the onus is upon the parties to formulate arguments." *Resolution Trust*, 43 F.3d at 599. For that reason, Plaintiff's election not to proffer argument, evidence, or authority in response to the motion is at their peril, and this Court will not commit scarce judicial resources to ferreting out every possible contention they could have made, but chose not to make, in opposition to the motion.

### IV. Analysis

Hudson moves for summary judgment on the basis that the general commercial liability policy it issued to Crown Theater excludes coverage for assault and/or battery such that the policy bars Casher's Section 27–23–2 claim for recovery of the $150,000 state court consent judgment.

### A. Direct Action Claim for Insurance Proceeds

As noted above, Casher filed the instant action pursuant to Alabama's direct-action statute, Section 27–23–2, Ala. Code (1975). Section 27–23–2 provides:

> Upon the recovery of a final judgment against any person, firm, or corporation by any person . . . for the loss or damage on account of bodily injury . . . if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the

> defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

Ala. Code § 27–23–2 (1975). In other words, for the purposes of the instant action, Casher effectively stands in the shoes of the insured (Crown Theater) subject to all coverage defenses that would be available to the insurer (Hudson) had the action been brought by Crown Theater. *See, e.g., Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011) (explaining the statute and that the injured party's rights under the tortfeasor's insurance policy are derivative); *St. Paul Fire & Marine Ins. Co. v. Nowlin*, 542 So. 2d 1190, 1194 (Ala. 1988) ("The law is clear that a judgment creditor's right under § 27–23–2 to proceed against the insurance company to satisfy a judgment obtained against the defendant/insured is dependent upon the rights of the insured against its insurer under the policy.").

In Alabama, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). An insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusion are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377,

7

379–80 (Ala. 1996) (internal citations omitted). "To the extent the language of an insurance policy is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co.*, 912 So. 2d at 1143. Nonetheless, "[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous." *Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 371 (Ala. 1995) (internal citations omitted). "Whether a provision of an insurance policy is ambiguous is a question of law." *Safeway Ins. Co.*, 912 So. 2d at 1143.

> The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. . . . In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. . . . This means that the terms of an insurance policy should be given a rational and practical construction."

*Poterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 799 (Ala. 2002) (internal citations and quotations omitted); *see also Am. Resources Ins. Co. v. H & H Stephens Const., Inc.*, 939 So. 2d 868, 873 (Ala. 2006). Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *see Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967), while the insurer bears the burden of proving

8

the applicability of any policy exclusion. *See U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala.1985).

Further, an "insurer's duty to defend is more extensive than its duty to [indemnify]." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 791 (Ala. 2002) (quoting *Armstrong*, 479 So. 2d at 1168). Generally, an insurer's obligations with respect to providing a defense to its insured in an action brought by a third party are determined by the allegations contained in the third party's complaint. *Ladner and Company, Inc. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977) (citations omitted). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Id.* (citing *Goldberg v. Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948)).

> However, a court is not constrained to consider only the allegations of the underlying complaint, but may additionally look to facts which may be proved by admissible evidence. *Tanner [v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1064 (Ala.2003)]; *see also Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005) (in deciding whether the allegations of the complaint show a covered accident or occurrence, "the court is not limited to the bare allegations of the complaint ... but may look to facts which may be proved by admissible evidence") (citations omitted). The test, ultimately, is this: "The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence." *Tanner*, 874 So. 2d at 1065.

9

*Essex Ins. Co. v. Foley*, 2011 WL 1706214, *3 (S.D. Ala. May 5, 2011).

While it is clear Casher cannot recover the insurance proceeds unless Crown Theater could have recovered them, *see Miller*, 86 So. 3d at 342, the Court must determine whether the claimed policy exclusion bars recovery. *See Alfa Specialty Ins. Co. v. Jennings*, 906 So. 2d 195, 199 (Ala. Civ. App. 2005). The policy exclusion at issue states:

> **Assault & Battery Exclusion – Absolute**
> This insurance policy does not apply to claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the **insured**, and/or his employees.

(Doc. 1-1, p. 36) (emphasis in the original). As this Court has already determined in a case applying the same policy exclusion,

> The exclusion applies in at least four (4) circumstances: 1) assault/battery caused by the insured and/or his employees; 2) assault/battery at the instigation of the insured and/or his employees; 3) assault/battery at the direction of the insured and/or his employees; and 4) assault/battery due to an omission by the insured and/or his employees.

*Robinson v. Hudson Specialty Ins. Group*, 984 F. Supp. 2d 1199, 1207–08 (S.D. Ala. 2013).

In the original, underlying state court complaint, Casher alleged Crown Theater was negligent and wanton, thereby proximately causing Darryl's injuries and resulting death. (Doc. 1-3, pp. 12–17). Further, Casher contended Crown Theater violated Alabama's Dram Shop Act by serving

Cedric, a minor. *Id.* at 8–11. All of these actions, including the alleged serving of alcohol to a minor, culminated in assault/battery (shooting) which resulted in Darryl's untimely death. These allegations speak clearly to the relevant exclusion. Discussing shockingly similar circumstances, this Court has already explained,

> As alleged, [Casher's] negligence claim clearly "arises out of" the assault/battery caused by omissions on the part of Crown Theater and/or its employees—*i.e.* the club's failure to maintain safety and order resulting in [his] being shot [and killed]. In other words, but for the assault/battery (the shooting), [Casher] would have no negligence claim because he would have had no injury. Here, there is only one set of indivisible injuries suffered by [Darryl], the victim of an assault/battery. "Those injuries cannot be severed and allocated to different causes, whether those 'causes' are separate legal theories or 'claims' relating to the same act or are actually separate acts that combined to cause the injuries." *Admiral Ins. Co. v. Price-Williams*, 129 So. 3d 991, 1002 (2013). . . . In sum, "liability-policy clauses that exclude losses arising from an assault and battery are effective to bar payments for any such loss, even when the only improper conduct of the insured is a purely negligent act or omission that simply made possible or facilitated the subsequent intentional assault or battery[.] *Price-Williams*, 129 So. 3d at 1001 (referencing and discussing the holdings of *Auto-Owners Ins. Co. v. Am. Central Ins. Co.*, 739 So. 2d. 1078 (Ala. 1999) and *Gregory v. W. World Ins. Co., Inc.*, 481 So. 2d 878 (Ala. 1985)).

*Robinson*, 984 F. Supp. 2d at 1208–09. Based on this Court's prior holdings, the Court is compelled to conclude the assault/battery exclusion in Policy

11

HSLL–10039 bars Casher's claim. As such, Hudson's motion for summary judgment is granted.

## V. Conclusion

For the reasons stated above, the Court **GRANTS** Hudson's motion for summary judgment (Doc. 16), and Plaintiff's claims are hereby **DISMISSED with prejudice**. A separate judgment will enter.

**DONE** and **ORDERED** this 18th day of July, 2017.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE